**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| LONNIE J. PARKER, | : | | |
| Plaintiff, | : | Civil Action No.: | 15-1253 (RC) |
| v. | : | Re Document Nos.: | 17, 19, 29 |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING AS MOOT PLAINTIFF'S MOTION FOR DISCOVERY**

## I. INTRODUCTION

Plaintiff, Mr. Lonnie Parker, challenges defendant Immigration and Customs Enforcement (ICE)'s response to his FOIA request. Mr. Parker sought records related to ICE's previous criminal investigation of Mr. Parker. ICE responded to Mr. Parker's request, but withheld portions of some documents under various FOIA exemptions. Mr. Parker argues that ICE's search was inadequate because it did not produce any communications between ICE and the FBI—which Mr. Parker asserts must exist—and because it insufficiently searched for responsive emails. The Court grants ICE summary judgment in part but denies ICE summary judgment as to the adequacy of some portions of its search.[1]

[1] Mr. Parker's cross-motion for summary judgment appears to seek an order compelling ICE to perform additional searches. Mem. P. & A. Supp. Pl.'s Mot. Summ. J. & Opp'n Def.'s Mot. Summ. J. (Pl.'s MSJ) at 6, ECF No. 19. Because the Court believes additional briefing by ICE may resolve this matter, Mr. Parker's motion is denied.

## II.  BACKGROUND

Mr. Parker filed a FOIA request on ICE in early 2014, seeking:

> All records from the United States Immigration and Customs Enforcement's office in Little Rock Arkansas [sic], listing my client's name (Lonnie Joseph Parker) or otherwise describing or discussing my client (Mr. Parker), that were created or generated from January 1, 1998 to January 31, 2006, currently located in any system of records in the possession or control of the United States Immigration and Customs Enforcement agency (including any archived or stored records), in any form or format, including any hand-written notes, diagrams, emails, phone logs, photographs, maps, diagrams, spread sheets, or any other forms of records responsive to this records request.

FOIA Request, ECF No. 17-3, Ex. 1. ICE is "the principal investigative arm of [the Department of Homeland Security] and the second largest investigative agency in the federal government." Pineiro Decl. ¶ 24, ECF No. 18.

After receiving this request, ICE determined that its Office of Enforcement and Removal Operations (ERO) and Homeland Security Investigations (HSI) office were the likely locations of responsive records. Pineiro Decl. ¶ 23. ERO searched the Central Index System database using Mr. Parker's name and date of birth, but did not find any entries in the index suggesting that ERO had any responsive records. Pineiro Decl. ¶ 27. ERO thus concluded its search. HSI searched the TECS system using Mr. Parker's name. Pineiro Decl. ¶ 28. TECS is a law enforcement database that includes case management functions and enforcement, inspection, and intelligence records. Pineiro Decl. ¶ 29. HSI located 60 pages of responsive records within TECS including "search query results, incident reports and reports of investigation from a criminal investigation case." Pineiro Decl. ¶¶ 7, 30. ICE withheld some portions of the records under FOIA Exemptions 6 and 7 and released the rest to Mr. Parker. Pineiro Decl. ¶ 7. Mr. Parker appealed this result administratively, and the ICE Office of the Principal Legal Advisor affirmed ICE's withholdings but instructed ICE to reprocess the request and locate additional potentially responsive records. Pineiro Decl. ¶¶ 8, 9.

Unsatisfied with this resolution, Mr. Parker filed suit against ICE in August of 2015. Compl., ECF No. 1. After Mr. Parker initiated this litigation, "HSI determined that . . . additional responsive hard file records beyond what was previously found in TECS" might exist in a Little Rock field office.[2] Pineiro Decl. ¶ 31. Agent Sanders, one of two ICE agents Mr. Parker discusses in his briefing, was then employed at the Little Rock office.[3] 2d Pineiro Decl. ¶ 8, ECF No. 21-1. "Based on his experience and knowledge of the Little Rock office's storage of physical case file records . . . using [Mr. Parker's] name and the case number associated with [Mr. Parker's] prior criminal case, [Agent Sanders] conducted a manual search of case file records located in a file cabinet in a secure room within the office." Pineiro Decl. ¶ 31, ECF No. 18. This search uncovered 129 pages of records, including "an application for a search warrant with supporting affidavit, fax cover coversheets [sic], military records, statutes and legal citations, an air force uniform manual [sic], agents' notes, a consent to search form, letters, employments forms, evidence chain of custody forms, notes, memoranda, court orders, transcript, and computer data file printouts." Pineiro Decl. ¶ 32. ICE released the recovered records after withholding some portions pursuant to FOIA Exemptions 6 and 7.[4] Pineiro Decl. ¶ 33.

---

[2] Given that Mr. Parker's initial FOIA request called in its first sentence for "[a]ll records from the United States Immigration and Customs Enforcement's office in Little Rock Arkansas [sic]," FOIA Request, it is mildly surprising that ICE required more than a year to consider searching the Little Rock office.

[3] ICE clarified in its opposition that this search was conducted by Agent Sanders. 2d Pineiro Decl. ¶ 8.

[4] ICE further determined that additional records might exist in the Minneapolis/St. Paul field office, and an "Intelligence Research Specialist" there "searched the TECS system and the office's paper file records by using [Mr. Parker's] name, date of birth, and case number," as well as the specialist's "experience and knowledge" of the office's storage system. Pineiro Decl. ¶ 35. That search resulted in nine pages of records, which ICE determined were not actually responsive and did not release. Pineiro Decl. ¶ 36.

Agent Sanders also searched "his personal Outlook email archives" but did not find any responsive records. 2d Pineiro Decl. ¶ 8. Mr. Parker's briefing also discusses the emails and other communications associated with an Agent Mensinger. Agent Mensinger left ICE before Mr. Parker's FOIA request was submitted to ICE. 2d Pineiro Decl. ¶ 10. Given that Agent Mensinger no longer had a functioning ICE email account, and that Mr. Parker sought records from before 2008, the only ICE record system that might still contain copies of any of Agent Mensinger's emails was "various back-up tape systems in regional offices." 2d Pineiro Decl. ¶ 10. Due to their age, these assorted systems are "no longer produced commercially" and "ICE no longer maintains the equipment and software" which would be required to read or search the email files stored within. 2d Pineiro Decl. ¶ 10. ICE does not describe any search for Agent Mensinger's email beyond establishing the inaccessible nature of the email archive tapes.

ICE now moves for summary judgment on the grounds that it performed an adequate search, withheld only material properly within FOIA Exemptions 6 and 7, and released all segregable material. *See generally* Mem. Law Supp. Def.'s Mot. Summ. J. (Def.'s MSJ), ECF No. 17-2. ICE provides a *Vaughn* index describing the material withheld from the records. *See generally Vaughn* Index, ECF No. 17-3, Ex. 5. Mr. Parker did not object to ICE's withholdings, but argues in his cross-motion for summary judgment that ICE did not perform an adequate search because it did not follow up on all of the leads that Mr. Parker identified.[5] *See generally* Mem. P. & A. Supp. Pl.'s Mot. Summ. J. & Opp'n Def.'s Mot. Summ. J. (Pl.'s MSJ), ECF No. 19.[6]

---

[5] In his reply, Mr. Parker also moved for discovery pursuant to Rule 56(d), Pl.'s Reply Mem. Supp. Pl.'s Mot. Summ. J. (Pl.'s Reply), ECF No. 24, which ICE opposed, Def.'s Opp'n Pl.'s Request Discovery (Def.'s Discovery Opp'n), ECF No. 26. Mr. Parker subsequently withdrew the request. Pl.'s Reply Re: Discovery (Pl.'s Discovery Reply), ECF No. 28.

[6] Mr. Parker's memorandum docketed at ECF No. 20 as the opposition is identical to the memorandum docketed at ECF No. 19 as Mr. Parker's Motion for Summary Judgment. For clarity, the Court cites only to ECF No. 19.

## III. LEGAL STANDARD

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the nonmovant. *Scott v. Harris*, 550 U.S. 372, 380 (2007). When assessing a summary judgment motion in a FOIA case, a court makes a *de novo* assessment of whether the agency has properly withheld the requested documents. *See* 5 U.S.C. § 552(a)(4)(B); *Judicial Watch v. U.S. Dep't of Homeland Sec.*, 598 F. Supp. 2d 93, 95 (D.D.C. 2009). To prevail on a motion for summary judgment, "the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements." *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980) (internal quotation marks omitted) (quoting *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)).

## IV. ANALYSIS

### A. Withholdings under FOIA Exemptions and Segregability

ICE requests summary judgment as to the propriety of its withholdings and its release of segregable materials because Mr. Parker is silent on both issues. *See, e.g.*, Def.'s Reply Supp.

Summ. J. & Opp'n Pl.'s Cross-Mot. Summ. J. (Def.'s Opp'n) at 1–2, ECF No. 21.[7] The matter is no longer so simple. The D.C. Circuit has held that—even if the nonmovant does not respond to the motion for summary judgment—the court cannot grant the motion simply because it was conceded. *See Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) ("Under the Federal Rules of Civil Procedure, a motion for summary judgment cannot be 'conceded' for want of opposition. 'The burden is always on the movant to demonstrate why summary judgment is warranted. The nonmoving party's failure to oppose summary judgment does not shift that burden.'" (quoting *Grimes v. District of Columbia*, 794 F.3d 83, 97 (D.C. Cir. 2015) (Griffith, J., concurring))). Instead, "[t]he District Court 'must always determine for itself whether the record and any undisputed material facts justify granting summary judgment.'" *Id.* (quoting *Grimes*, 794 F.3d at 97 (Griffith, J., concurring) and citing Fed. R. Civ. P. 56(e)(3)). This requires the Court to conduct an independent evaluation to determine whether the record and any undisputed material facts justify granting summary judgment. *See Grimes*, 794 F.3d at 98–99 (Griffith, J. concurring) ("The wiser course for district courts is to conduct an independent review of the record to determine whether there remains any genuine dispute over material facts. If not, the court should say as much without relying upon any concession by the nonmoving party."). The Court thus independently considers if ICE has properly invoked the FOIA exemptions it claims, and if it has met it burden to show that it has released all reasonably segregable material.

[7] ICE's memorandum docketed at ECF No. 22 as the opposition is identical to the memorandum docketed at ECF No. 21 as ICE's reply. For clarity, the Court cites only to ECF No. 21.

1. Application of FOIA Exemptions

ICE withholds portions of records under FOIA Exemption 6, Exemption 7(C), and Exemption 7(E).[8] *See generally Vaughn* Index, ECF No. 17-3, Ex. 5. For many documents, ICE asserts FOIA Exemption 6 and Exemption 7(C) together—because the Court concludes that Exemption 7(C) justifies the withholdings it does not analyze the applicability of Exemption 6. The Court separately analyzes ICE's remaining withholdings under Exemption 7(E) alone.

Because "'[d]isclosure, not secrecy, is [FOIA's] dominant objective,' . . . agencies may withhold only those documents or portions thereof that fall under one of nine delineated statutory exemptions." *Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 845 (D.C. Cir. 2010) (second alteration in original) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) and citing 5 U.S.C. § 552(b)). The agency's documents supporting the exemption, including the *Vaughn* index, must "permit adequate adversary testing of the agency's claimed right to an exemption." *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 840 F. Supp. 2d 226, 230 (D.D.C. 2012) (quoting *Kimberlin v. U.S. Department of Justice*, 139 F.3d 944, 950 (D.C. Cir. 1998)); *see also* 5 U.S.C. § 552(a)(4)(B). However, "a reviewing court should 'respect the expertise of an agency' and not 'overstep the proper limits of the judicial role in FOIA review,'" *Pinson v. U.S. Dep't of Justice*, 160 F. Supp. 3d 285, 293 (D.D.C. 2016) (quoting *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1388 (D.C. Cir. 1979)), and an

[8] ICE also labels each of its withholdings with Privacy Act exemption (j)(2). Mr. Parker never raises any claims under the Privacy Act. *See generally, e.g.*, Comp., ECF No. 1. The Court thus does not address whether the Privacy Act would require disclosing the records at issue here, although the Court notes that all of the records in this case appear to originate within record systems that have been exempted from the Privacy Act. *See* Privacy Act of 1974; Department of Homeland Security U.S. Immigration and Customs Enforcement-009 External Investigations System of Records, 75 Fed. Reg. 404 (Jan. 5, 2010); *see also* Pineiro Decl. ¶ 40–44; *Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 25 (D.D.C. 2009).

agency's explanation is thus "sufficient if it appears 'logical' or 'plausible,'" *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007).

*a. Threshold Requirement of Exemption 7*

ICE claims that Exemption 7(C) and 7(E) apply to some withheld material. "In order to withhold documents under Exemption 7, the agency must, as a preliminary matter" make a "threshold" showing demonstrating "that the records were compiled for a law enforcement purpose." *Kay v. FCC*, 976 F. Supp. 23, 37 (D.D.C. 1997). Here, ICE asserts that it meets this threshold requirement because "the Secretary of Homeland Security is charged with the administration and enforcement of laws relating to the Customs and the importation and exportation of goods in the country" and "ICE . . . is responsible for identifying and eliminating vulnerabilities within the nation's borders. . . . that threaten national security and public safety." Pineiro Decl. ¶ 46. The specific "records at issue in this matter were compiled as part of a criminal investigation by . . . [the] U.S. Customs Service." Pineiro Decl. ¶ 46. Mr. Parker does not argue that any of the records withheld or redacted by ICE under Exemption 7 were not compiled for a law enforcement purpose, and in fact characterizes his FOIA request as seeking "public records pertaining to [ICE's] prior criminal investigation of Plaintiff for the time period of ICE's investigation action." Pl.'s MSJ at 1, ECF No. 19. The Court thus credits ICE's assertion that all of the relevant records were compiled for law enforcement purposes and that Exemption 7's threshold requirement has been met.

*b. Exemption 7(C)*

ICE uses Exemption 7(C) to justify withholding the names, initials, signatures, and phone numbers of ICE employees and third-party individuals. *See generally Vaughn* Index. ICE may also have withheld email addresses and room numbers of ICE employees under Exemption 7(C).

Pineiro Decl. ¶ 49. According to ICE, each affected individual "has an interest in remaining free from harassment." Def.'s MSJ at 12.

Under Exemption 7(C), an agency is exempt from producing "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). A court first determines if there is a privacy interest in the information to be disclosed, *ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011), and then balances the individual's privacy interest against the public interest, considering only the public interest "that focuses on 'the citizens' right to be informed about "what their government is up to,"'" *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Press*, 489 U.S. 749, 773 (1989)). It is a FOIA requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

Here, as ICE notes, the individuals and ICE employees do clearly have a privacy interest as the names, addresses, and phone numbers redacted could be linked to them and potentially expose them to harassment. Mr. Parker does not articulate a public interest in learning personal information about the ICE agents or third-party individuals mentioned in these documents. Even if such an interest existed—for example, if identifying particular ICE employees revealed some slight amount of information about how the government was fulfilling its duties—the Court concludes that this interest is outweighed by the private interest in privacy. Information about "private individuals appearing in files within the ambit of Exemption 7(C)" is categorically exempt from disclosure unless disclosure "is necessary in order to confirm or refute compelling

evidence that the agency is engaged in illegal activity." *See Pinson v. U.S. Dep't of Justice*, No. 12-1872, 2016 WL 4074130, at *7 (D.D.C. July 29, 2016) (quoting *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1206 (D.D.C. 1991)). Here, there is no allegation of illegal activity by the agency, and the private individuals' data must therefore be withheld. Although private information about agency employees is somewhat less protected, the D.C. Circuit has consistently held that the privacy interests of investigators justifies withholding their information in many circumstances. *See Schrecker v. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003). Mr. Parker articulates no public interest in obtaining information about the particular investigators involved in his case. The Court thus finds that the privacy interests of the ICE employees justify withholding their personal information because revealing personal data about relatively low-level employees would not significantly inform the public about what the government was up to, and grants ICE summary judgment as to its use of Exemption 7(C).

*c. Exemption 7(E)*

ICE applies Exemption 7(E) to withhold "internal case numbers and internal system codes" from several documents.[9] ICE's declaration explains that these materials comprise "sensitive database and event codes, identification numbers, law enforcement system URLs, internal website links, record identification numbers, event numbers, category codes, TECS codes, method codes, file numbers, event numbers [sic], status codes, internal agency codes, case numbers, program codes, and system codes." Pineiro Decl. ¶ 57.

Exemption 7(E) protects law enforcement information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines

[9] ICE withholds these case numbers and internal system codes from Documents 1, 2, 3, 18, 21, 22, 23, 24, 27, and 28. *See generally Vaughn* Index.

for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The D.C. Circuit has "set[] a relatively low bar for the agency to justify withholding," *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011), such information may be withheld "not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009).

The "sensitive database and event codes, identification numbers, law enforcement system URLs, internal website links, record identification numbers, event numbers, category codes, TECS codes, method codes, file numbers, . . . status codes, internal agency codes, case numbers, program codes, and system codes" withheld by ICE create such a chance of a reasonably expected risk of circumvention of the law. Pineiro Decl. ¶ 57. According to ICE, this information, which is used to store and index data and is "not readily known by the public," "could be used by persons seeking improper access to law enforcement data" to navigate law enforcement databases and possibly even "breach into sensitive law enforcement systems" and manipulate data. *See, e.g.*, Pineiro Decl. ¶ 57, *Vaughn* Index at 1. ICE also notes that revealing these codes "would not assist the public in understanding how the agency is carrying out its statutory responsibilities." *See, e.g.*, *Vaughn* Index at 1–2. The Court agrees that disclosing this information could reasonably be expected to create a risk of circumvention by revealing how ICE's databases work and rendering them more vulnerable to manipulation. Mr. Parker does not object to the withholdings, and similar material has been withheld under Exemption 7(E) by other courts in this jurisdiction. *See, e.g.*, *Skinner v. U.S. Dep't of Justice*, 893 F. Supp. 2d 109,

114 (D.D.C. 2012), *aff'd sub nom. Skinner v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 12-5319, 2013 WL 3367431 (D.C. Cir. May 31, 2013) (withholding TECS user access codes and TECS numbers under Exemption 7(E)); *Abdelfattah v. U.S. Immigration & Customs Enf't*, 851 F. Supp. 2d 141, 145 (D.D.C. 2012) (affirming the exemption of "program codes, investigative notes, and internal instructions" by ICE under Exemption 7(E)). The Court thus approves ICE's use of Exemption 7(E).

2. Segregability

ICE's declaration states that their employees "reviewed each record line-by-line to identify information exempt from disclosure" and released all reasonably segregable, non-exempt portions. Pineiro Decl. ¶ 59–60. FOIA requires that any reasonably segregable portion of a record shall be provided to any person requesting such record after removal of exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. *See* 5 U.S.C. § 552(b); *see also Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002). Given that "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007), and that Mr. Parker does not dispute ICE's release of reasonably segregable material, the Court grants ICE summary judgment on its obligation to release all non-exempt portions of records.

**B. Motion for Discovery**

Plaintiff's reply included a motion for telephonic discovery. Pl.'s Reply at 5–6, ECF No. 24.[10] Defendant opposed the motion for discovery on several grounds, *see generally* Def.'s

[10] Plaintiff's reply, docketed at ECF No. 24, contains the motion for telephonic discovery. The motion itself is separately docketed at ECF No. 29.

Discovery Opp'n, ECF No. 26, and Plaintiff withdrew the request, *see generally* Pl.'s Discovery Reply, ECF No. 28. Plaintiff's motion for discovery is thus denied as moot.

**C. Adequacy of the Search**

The main bone of contention between the parties is the adequacy of ICE's search. Mr. Parker objects on two grounds: first, that ICE did not identify any records of communications between ICE and the FBI, and second, that ICE insufficiently searched for emails from its agents. The Court agrees that ICE's search is not inadequate simply because it has not located communications with the FBI, but denies ICE summary judgment as to the adequacy of its email search because it does not provide sufficient detail about the search terms used to search Agent Sanders's email or the backup system that potentially contains Agent Mensinger's email.

FOIA obligates agencies to perform an adequate search—one "reasonably calculated to uncover all relevant documents." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (internal quotation mark omitted) (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). The search need not encompass "every record system," but must be "a good faith, reasonable search of those systems of records likely to possess the requested records." *Marino v. Dep't of Justice*, 993 F. Supp. 2d 1, 9 (D.D.C. 2013) (citing *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). The agency must document its search by providing a "reasonably detailed" affidavit describing the scope of that search. *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 313–14 (D.C. Cir. 2003) (quoting *Oglesby*, 920 F.2d at 68). Such an affidavit must be detailed enough to "allow the district court to determine if the search was adequate" and will typically contain "the search terms and the type of search performed." *Oglesby*, 920 F.2d at 68. "Agency affidavits enjoy a presumption of good faith, which will withstand purely speculative claims about the existence and discoverability of other documents."

*Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981) (citing *Goland v. CIA*, 607 F.2d 339, 355 (D.C. Cir. 1978)). If the agency has produced such a reasonably detailed affidavit describing its search, the burden shifts to the FOIA requester to produce "countervailing evidence" of a genuine dispute of material fact as to the adequacy of the search. *Morley*, 508 F.3d at 1116.

First, Mr. Parker argues that the search was inadequate because ICE did not sufficiently search for communications between ICE and the FBI, focusing in particular on emails or other communications by ICE Agents Mensinger and Sanders. Pl.'s MSJ at 5. In support of this contention, Mr. Parker provides his own declaration stating that he has "personal knowledge," based on the "court room testimony of several ICE agents" in the criminal matter and "interactions with ICE agents involved in that criminal investigation," that Agents Mensinger and Sanders "were working closely and in cooperation with the Federal Bureau of Investigation." Parker Decl. ¶¶ 2–3, ECF No. 19-2. Mr. Parker essentially argues that, because the ICE agents collaborated with the FBI, ICE must possess records memorializing these communications and ICE's failure to locate any such records is thus evidence that their search was inadequate.[11]

The Court rejects Mr. Parker's argument that ICE's search fails because it did not locate communications between ICE and the FBI. In this circuit, it is clear that a plaintiff's unsubstantiated belief that missing records exist cannot demonstrate the inadequacy of an agency's search. The D.C. Circuit has dismissed as "mere speculation" similar arguments from plaintiffs that the agency did not locate documents that the plaintiffs suspected to exist. *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006) (citing *Steinberg*

[11] Although ICE argues that Mr. Parker has not provided any "clear and known leads" at all, Def.'s Opp'n at 4–5, the Court understands Mr. Parker to argue that his leads are the alleged recorded communications between ICE agents and FBI agents.

*v. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994)); *Media Research Ctr. v. U.S. Dep't of Justice*, 818 F. Supp. 2d 131, 138 (D.D.C. 2011) (rejecting plaintiff's speculative argument "that the search was inadequate because certain documents they believe must have been created have not been produced" because plaintiff's position was "conjecture" and the agency provided sufficiently detailed affidavits describing its search); *see also Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986) (acknowledging that an agency has a "difficult" task to "demonstrate that a specific file does *not* exist' and holding that "a search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request").

Here, Mr. Parker presents no evidence that any records ever existed of communication between ICE and the FBI, much less that such records were possessed by ICE at the time of its search.[12] ICE's affidavits describing the search it performed are, in general,[13] adequate. ICE explains in detail how it determined which systems were likely to contain responsive documents,

---

[12] Mr. Parker thus faces several challenges. First, he has not shown that any records relating to ICE's collaboration with the FBI ever existed. However, even if he surmounted that hurdle, he would struggle to show that ICE violated FOIA by not producing the records. Because an agency is not required "to document the fate of documents it cannot find," *Bey v. U.S. Dep't of Justice*, 518 F. Supp. 2d 14, 21 (D.D.C. 2007) (quoting *Roberts v. U.S. Dep't of Justice*, No. 92-1707, 1995 WL 356320, *2 (D.D.C. Jan. 29, 1993)), an otherwise adequate search by an agency essentially creates a presumption that documents not located have been destroyed or otherwise left the agency's control. *See also Meeropol v. Meese*, 790 F.2d 942, 953–54 (D.C. Cir. 1986) ("Even if we assume that the documents plaintiffs posit were *created*, there is no reason to believe that the documents, thirty years later, still exist, or, if they exist, that they are in the possession of the [agency]." (quoting *Goland*, 607 F.2d at 353)); *Bey*, 518 F. Supp. 2d at 21 ("The fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it." (quoting *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1385 (8th Cir. 1985)). An agency does not violate FOIA by destroying records prior to receiving a FOIA request. *See Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1004 (D.C. Cir. 2009) ("[A]n agency has no duty to retrieve and release documents it once possessed but that it *legitimately* disposed of *prior* to the date a FOIA request was received." (quoting *McGehee v. CIA*, 697 F.2d 1095, 1103 n.33 (D.C. Cir. 1983))).

[13] The Court discusses *infra* the lack of specificity in ICE's description of its search of Agent Sanders's email.

and describes its process for searching those systems. For example, ICE explains that as part of the search by HSI, a Records Disclosure United Management and Program Analyst searched ICE's TECS system, a database, "using [Mr. Parker's] name as a search term." Pineiro Decl. ¶¶ 28–29. ICE has thus presented a sufficiently detailed affidavit that "enjoy[s] a presumption of good faith [sufficient to] withstand purely speculative claims about the existence and discoverability of other documents." *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981) (citing *Goland v. CIA*, 607 F.2d 339, 355 (D.C. Cir. 1978)). As in *Baker & Hostetler* and *Media Research Center*, Mr. Parker's conjecture about the possible existence of other documents fails to show that the agency's search was inadequate.

Although originally focusing on purportedly missing communications between ICE and the FBI, in his reply, Mr. Parker focused on his observations about ICE's declarations supporting its search. According to Mr. Parker, ICE "changed" its position between its initial declaration and the second declaration attached to its opposition. In the initial declaration, ICE stated that the search of its Little Rock office proceeded as follows: first, the special agent conducting the search determined that in "his experience and knowledge" of the storage system, relevant files might be located "in a file cabinet in a secure room within the office;" second, the special agent searched that file cabinet and identified some responsive records; and third, given the request, the special agent concluded that "there were no additional locations in the Little Rock office likely to contain responsive records." Pineiro Decl. ¶ 31. In its second declaration, ICE clarified that the previously described search of the Little Rock office was in fact performed by Agent Sanders, a focus of Mr. Parker's briefing. 2d Pineiro Decl. ¶ 8, ECF No. 21-1. ICE further clarified that, in addition to searching the file cabinet, Agent Sanders searched "his personal Outlook email archives

for responsive records" but that search revealed no records. 2d Pineiro Decl. ¶ 8. Mr. Parker points to this discrepancy as evidence that ICE's search was inadequate. Pl.'s Reply at 2–3.

Mr. Parker accurately notes that ICE's description of its search has changed. However, the Court does not agree with Mr. Parker that ICE's clarifications demonstrate bad faith or an inadequate search. The Court has no reason to conclude that ICE's clarification about the scope of the search performed was anything more than that—a clarification, perhaps a result of the fact that Agent Sanders's search of his email produced no responsive records. Courts in this jurisdiction have previously concluded that, even if an agency performs a second, supplemental search the agency retains the presumption of good faith. *See Airaj v. United States*, No. CV 15-983 (ESH), 2016 WL 1698260, at *7 (D.D.C. Apr. 27, 2016)) ("[T]he D.C. Circuit has held that the performance of additional searches following an agency's initial response to a FOIA request not only does not discredit the original search, but to the contrary, actually indicates good faith and 'suggest[s] a stronger . . . basis for accepting the integrity of the search.'" (quoting *Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986)), *appeal filed*, No. 16-5193 (June 30, 2016). In this case, instead of performing an additional search ICE merely explained its initial search more thoroughly.

However, although the Court rejects Mr. Parker's argument based on ICE's expanded descriptions, the Court agrees with Mr. Parker that ICE has provided insufficient detail as to the "search terms on the nature of that electronic search process" for Agent Sanders's email. Pl.'s Reply at 3. ICE indeed provides no details about the method of the search for Agent Sanders's email, except that it involved "searches of his personal Outlook email archives." 2d Pineiro Decl. ¶ 8. It is not enough for the agency to conclusorily state that it searched relevant records, *Weisberg*, 627 F.2d at 370, instead, the agency must provide additional detail, including the search terms used. *See also Pinson v. U.S. Dep't of Justice*, No. CV 12-1872 (RC), 2016 WL

29245, at *18 (D.D.C. Jan. 4, 2016) (denying agency summary judgment as to the adequacy of its search when the agency did not provide a search method or search terms used). The Court therefore cannot grant ICE summary judgment as to the adequacy of its search for Agent Sanders's email until it describes with additional specificity how that search was performed.[14]

Finally, the parties disagree about the extent of ICE's duties to investigate Agent Mensinger's email. Both ICE and Mr. Parker agree that ICE has not searched any systems for potentially responsive emails of Agent Mensinger. According to ICE, Agent Mensinger is no longer with the agency. 2d Pineiro Decl. ¶ 10, ECF No. 21-1. His status as a former employee, combined with the fact that Mr. Parker sought records created prior to 2008, means that relevant emails would be found, if anywhere, on "various back-up tape systems in regional offices," which are "no longer produced commercially" and for which "ICE no longer maintains the equipment and software." 2d Pineiro Decl. ¶ 10. ICE argues that because it has no capability to read or search any extant email archives, it has discharged its search obligations. Def.'s Opp'n at 6 n.3.

Mr. Parker first questions the veracity of ICE's assertion that it can search Agent Sanders's email but not Agent Mensinger's. Pl.'s Reply at 4. The Court is persuaded by ICE's explanation of the difference in accessibility between the agents' email accounts. As ICE explains, Agent Sanders—unlike Agent Mensinger—is a current employee with an active email account that he is capable of searching.[15] Agent Mensinger no longer has an agency email

[14] Agent Sanders should also describe whether he communicated with the FBI via email during the relevant time period of the investigation of Mr. Parker. If so, and if the agency does not produce the emails, Agent Sanders should explain why these emails are not now likely to be retrievable.

[15] It is not clear to the Court that any emails sent or received by Agent Sanders during the relevant time period would have migrated to the current Outlook system or whether they too would have remained on now-inaccessible recovery tapes. This issue too should be addressed in the supplemental declarations.

account. If his emails exist, it is only within the archives from before 2008, which the agency now claims are inaccessible.

However, the Court is more sympathetic to Mr. Parker's argument that ICE must provide more information about the backup systems that may contain Agent Mensinger's email (and possibly Agent Sanders's older emails as well). Pl.'s Reply at 4–5. Mr. Parker argues that ICE provides "no meaningful details" such as the "computer programs" the backup system uses or descriptions of any attempts by ICE to search the backup system. Pl.'s Reply at 4–5. The D.C. Circuit has required that an agency "inform the court and plaintiffs whether backup tapes of any potential relevance exist" and "whether there is any practical obstacle to searching them." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 515 (D.C. Cir. 2011). As the mention of obstacles suggests, not every backup system is amenable to a search. The D.C. Circuit noted that searching a backup system could be "impossible, impractical, or futile" if the system was configured only to restore data after a disaster and did not include the ability to locate a specific file. *Id.* at 514 (citing *Stewart v. U.S. Dep't of the Interior*, 554 F.3d 1236, 1243–44 (10th Cir. 2009)). In *Safety Research & Strategies, Inc.*, another court in this jurisdiction found that the *Ancient Coin Collectors* requirement was satisfied based on an affidavit from the agency's deputy chief information officer. *Safety Research & Strategies, Inc. v. U.S. Dep't of Transp.*, 903 F. Supp. 2d 1, 7 (D.D.C. 2012). That affidavit "provided a detailed description" of the agency's backup system and explained the obstacles to searching the system. *Id.* The Court directs ICE to provide an affidavit from an information-technology professional—like the affidavit cited in *Safety Research & Strategies, Inc.*—that describes the email backup system potentially containing Agent Mensinger's emails with greater specificity and describes any practical obstacles to searching that system. Without such a meaningful description of the

agency's search process, Mr. Parker cannot adequately assess and potentially challenge the agency's claims, thus, this Court may not grant ICE summary judgment.

## V.  CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 17) is **GRANTED IN PART AND DENIED IN PART**, Plaintiff's motion for summary judgment (ECF No. 19) is **DENIED AS PREMATURE**, and Plaintiff's motion for discovery (ECF No. 29) is **DENIED AS MOOT**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: March 2, 2017                                        RUDOLPH CONTRERAS
                                                            United States District Judge