# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| LONNIE J. PARKER, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 15-1253 (RC) |
| | : | | |
| v. | : | Re Document No.: | 35, 37 |
| | : | | |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### Granting in Part and Denying in Part Defendant's Renewed Motion for Summary Judgment; Granting in Part and Denying in Part Plaintiff's Renewed Motion for Summary Judgment

## I. INTRODUCTION

Plaintiff Lonnie Parker challenges the response of Defendant U.S. Immigration and Customs Enforcement ("ICE") to his Freedom of Information Act ("FOIA") request, which seeks records in ICE's possession related to the agency's previous criminal investigation of him. Following the parties' first round of motions for summary judgment, the Court granted in part and denied in part ICE's motion, affirming ICE's decision to withhold portions of certain responsive records under FOIA Exemption 7, but requesting additional detail regarding ICE's search for responsive records. With its renewed motion for summary judgment, ICE argues that it has sufficiently demonstrated, through a new set of declarations, that it performed an adequate search designed to recover all records responsive to Mr. Parker's request. In his own renewed motion, Mr. Parker once again disagrees. And once again, this Court finds some portions of ICE's search adequate and sufficiently explained, and other portions inadequate or insufficiently

explained. Therefore, this Court grants in part and denies in part both parties' renewed motions for summary judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In early 2014, Mr. Parker filed a FOIA request with ICE seeking:

> All records from the United States Immigration and Customs Enforcement's office in Little Rock Arkansas [sic], listing my client's name (Lonnie Joseph Parker), or otherwise describing or discussing my client (Mr. Parker), that were created or generated from January 1, 1998 to January 31, 2006, currently located in any system of records in the possession or control of the United States Immigration and Customs Enforcement agency (including any archived or stored records), in any form or format, including any hand-written notes, diagrams, emails, phone logs, photographs, maps, diagrams, spread sheets, or any other forms of records responsive to this records request.

FOIA Request, Ex. 1 at 1, ECF No. 17-3.

Upon receipt of Mr. Parker's FOIA Request, ICE identified the Office of Enforcement and Removal Operations ("ERO") and Homeland Security Investigations ("HSI") as the locations most likely to have all responsive records. Decl. Fernando Pineiro ("Pineiro Decl.") ¶ 23, ECF No. 18. ERO searched its Central Index System database, but was unable to find any responsive records. Pineiro Decl. ¶ 27. HSI searched its TECS system using Mr. Parker's name and located sixty pages of responsive records, which it released to Mr. Parker after withholding some portions of the records pursuant to FOIA Exemptions 6 and 7. Pineiro Decl. ¶¶ 7, 28, 30. Mr. Parker filed suit in this Court thereafter. *See* Compl., ECF No. 1.

After this suit began, "HSI determined that . . . additional responsive hard file records" might exist at ICE's Little Rock field office. Pineiro Decl. ¶ 31. HSI's Records Disclosure Unit tasked Special Agent Wayne Sanders, one of the two agents assigned to Mr. Parker's criminal case, with searching for those physical records because of "his experience and knowledge of the Little Rock office's storage of physical case file records." Pineiro Decl. ¶ 31; Suppl. Pineiro

Decl. ¶ 8, ECF No. 21-1. This hand search uncovered an additional 129 pages of records, which ICE released to Mr. Parker after redacting some portions pursuant to FOIA Exemptions 6 and 7. Pineiro Decl. ¶¶ 31–33. Agent Sanders also searched his personal Outlook emails, including archived emails, and did not find any responsive records. 2d Pineiro Decl. ¶ 8, ECF No. 21-1.

ICE subsequently moved for summary judgment on the grounds that it had performed an adequate search for responsive records and had produced such responsive records, excepting those portions that it had properly withheld, to Mr. Parker. *See* Def.'s 1st Mot. Summ. J. ("Def.'s 1st Mot."), ECF No. 17-2. Mr. Parker also moved for summary judgment, challenging the adequacy of ICE's search for responsive records, but not its withholdings pursuant to Exemptions 6 and 7. *See* Pl.'s 1st Mot. Summ. J. ("Pl.'s 1st Mot."), ECF No. 19. More specifically, he challenged the adequacy of the search because ICE had not searched for all communication records (including emails) of the two agents assigned to his case, and because the agency's search had failed to uncover any records of communications between ICE and the the Federal Bureau of Investigation ("FBI") in connection with his criminal case. Pl.'s 1st Mot. at 6.

The Court granted in part and denied in part ICE's motion and denied Mr. Parker's. *See Parker v. U.S. Immigration & Customs Enf't*, 238 F. Supp. 3d 89, 94–95 (D.D.C. 2017). The Court found that ICE had sufficiently justified its withholding of portions of the responsive documents pursuant to Exemption 7. *Id.* at 98, 101. However, the Court did not grant ICE summary judgment in full because the agency had not provided sufficient detail about the search terms used to search Agent Sanders's email account or the backup systems that potentially contained the emails of the other special agent assigned to the criminal investigation, Agent Mensinger, from the relevant time period. *Id.* at 101.

Specifically, the Court first found that "ICE has provided insufficient detail as to the 'search terms on the nature of that electronic search process' for Agent Sanders's email," because "[i]t is not enough for the agency to conclusorily state that it searched relevant records"; "instead, the agency must provide additional detail, including the search terms used." *Id.* at 104 (citing Pl.'s Reply at 3, ECF No. 24). Second, the Court explained that in order for it to find for ICE, "Agent Sanders should also describe whether he communicated with the FBI via email during the relevant time period of the investigation of Mr. Parker. If so, and if the agency does not produce the emails, Agent Sanders should explain why these emails are not now likely to be retrievable." *Id.* at 104 n.14. Third, the Court directed the agency to explain whether "any emails sent or received by Agent Sanders during the relevant time period would have migrated to the current Outlook system or whether they too would have remained on now-inaccessible recovery tapes." *Id.* at 105 n.15. Fourth and finally, the Court held that in order for ICE to succeed on summary judgment, it would need to provide additional information about the backup systems that may contain Agent Mensinger's emails, as well as Mr. Sanders's older emails. *Id.* at 105. Therefore, it directed "ICE to provide an affidavit from an information-technology professional . . . that describes the email backup system potentially containing Agent Mensinger's emails with greater specificity and describes any practical obstacles to searching that system." *Id.*

ICE has now renewed its motion for summary judgment on the ground that the new declarations it submitted with its motion provide sufficient specificity as to how Agent Sanders searched his emails and how ICE searched its backup email system for responsive records, and that therefore the agency has now demonstrated that it has performed a search "reasonably calculated to uncover all relevant documents." Def.'s Renewed Mot. Summ. J. ("Def.'s Mot.") at 1, ECF No. 35-1 (citing *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir.

4

1983)). Mr. Parker has also filed a renewed motion for summary judgment, contesting ICE's assertion that it has demonstrated that it has performed an adequate search. Pl.'s Renewed Mot. Summ. J. ("Pl.'s Mot.") at 3, ECF No. 37. The parties' renewed cross-motions for summary judgment are now ripe for decision.

### III. LEGAL STANDARDS

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the nonmovant. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

To prevail on a motion for summary judgment, a defendant agency must establish that it has conducted a search that is "reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351. More specifically, the agency must demonstrate "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "The adequacy of an agency's search is measured by a 'standard of reasonableness' and is 'dependent upon the circumstances of the case.'" *Weisberg*, 705 F.2d at 1351 (internal citations omitted). It is "generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).

5

## IV. ANALYSIS

ICE has submitted two new declarations in support of its renewed motion for summary judgment: one by Agent Wayne Sanders, who participated as a Special Agent in the criminal investigation of Mr. Parker, Decl. Wayne Sanders ("Sanders Decl.") ¶ 5, ECF No. 35-3; and one by Charles J. Mader, an IT specialist at ICE, Decl. Charles Mader ("Mader Decl.") ¶ 1, ECF No. 35-4. The declarations were meant to address the deficiencies in Defendant's first motion for summary judgment by providing more information about how Agent Sanders searched his email, including the type of search and the search terms used, and by describing "the email backup system potentially containing Agent Mensinger's emails with greater specificity and describ[ing] any practical obstacles to searching that system." *Parker*, 238 F. Supp. 3d at 105. These declarations were also meant to address whether Agent Sanders had communicated with the FBI via email during his participation in the investigation of Mr. Parker, and where Agent Sanders's emails that he sent and received before he was given a Microsoft Outlook account were located. *Id.* at nn.14–15.

In his declaration, Agent Sanders clarifies that he has "no recollection of communicating with the Federal Bureau of Investigation (FBI) electronically during the relevant time period pertaining to the Plaintiff's underlying criminal case." Sanders Decl. ¶ 17. Mr. Parker appears satisfied with this response, as he does not challenge ICE's failure to produce records of communications between ICE and the FBI in his renewed motion for summary judgment. However, Mr. Parker challenges the adequacy of ICE's response to the three other gaps the Court identified in its adjudication of ICE's first motion for summary judgment, as well as other gaps he believes were left by the two new declarations. The Court addresses each objection in turn.

## A. The Sanders Declaration

Mr. Parker points to five perceived "gaps" in Agent Sanders's declaration: the question of whether Agent Sanders was qualified to search his own email, questions regarding the mechanics of that search, the question of the fate of Mr. Sanders's pre-August 2006 emails, questions regarding Agent Sanders's search of his hard drive, and the question of whether ICE could or should have conducted a data recovery procedure to retrieve deleted emails and documents.

Courts apply "a 'reasonableness' test to determine the 'adequacy' of a search methodology, consistent with congressional intent tilting the scale in favor of disclosure." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998) (citing *Weisberg*, 705 F.2d at 1351). In order for a search to be adequate, it need not involve searching every record system, *Oglesby*, 920 F.2d at 68, nor does it need to produce all relevant documents, *Meeropol v. Meese*, 790 F.2d 942, 952–53 (D.C. Cir. 1986). However, the search does need to be "reasonably calculated to uncover all relevant documents," *Weisberg*, 705 F.2d at 1351, "using methods which can be reasonably expected to produce the information requested," *Oglesby*, 920 F.2d at 68. In order to prevail on summary judgment, the defending agency must demonstrate that it has done this. *See Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007).

Mr. Parker is correct that some material questions remain regarding the adequacy of ICE's search for records responsive to his FOIA request, though not nearly as many as he suggests. Therefore, while the Sanders declaration brings us closer to understanding the nature and adequacy of ICE's search for responsive records, and in particular responsive emails, the Court cannot yet grant ICE summary judgment in full.

### 1. Agent Sanders's Ability to Search his own Email Account

Mr. Parker first challenges the sufficiency of ICE's search on the ground that the agency did not specify whether Agent Sanders had the technical qualifications necessary to search his own email. Pl.'s Mot. at 5 ("Plaintiff would note that there is a significant initial issue of whether this particular declarant actually has the necessary technical qualifications, training and / or skills needed for performing the computer email search actions (and particularly investigatory or recovery actions involving complex computer searches for historic or archival electronic email records) discussed in his declaration.") In some instances, such as when an agency is attempting to search complex data systems, use of an IT specialist may be required. But courts have often found searches to be adequate even when agency employees have searched their own email accounts for responsive records. *See, e.g.*, *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514–15 (D.C. Cir. 2011) (finding no issue with non-IT staff members' searches of their own emails); *Safety Research & Strategies, Inc. v. U.S. Dep't Transp.*, 903 F. Supp. 2d 1, 7–8 (D.D.C. 2012) (same). This is because searches of emails accounts are not "complex computer search[es]," as Mr. Parker suggests. Pl.'s Mot. at 5. Email accounts are designed to be easily searched.

Additionally, as Mr. Mader explained in his declaration, "ICE does not have an agency-wide policy or regulation mandating how employees must store and organize their emails, other electronic files, or paper files." Mader Decl. ¶. As such, it logically follows that one of the people most capable of searching an email account is the custodian of that account, the person responsible for organizing and archiving it. Based on Agent Sanders's description of how he organizes his email and how he archives it, he appears to be perfectly capable of searching his own email account using "Outlook's search function," a search bar which retrieves "identified

search terms in any portion of an email (addresses, subject lines, and email body)." Sanders Decl. ¶ 15. Indeed, searching for emails using this search function is something that most email users do regularly. Without any countervailing evidence explaining why the custodian of this email account is not qualified to search it, Mr. Parker cannot prevail on this argument.

### 2. The Mechanics of Agent Sanders's Outlook Search

Next, Mr. Parker seeks more details about the search itself. For example, he points out that "[s]ince there are certainly many versions of the Outlook program, and certainly many types of search actions that can be used to search using the various Microsoft Outlook programs (including both basic and advanced search options), it is not at all clear exactly what type of 'Outlook search' was actually performed by Mr. Sanders, which of course is necessary to evaluate whether Mr. Sanders's search was sufficiently inclusive in scope to locate all responsive records." Pl.'s Mot. at 4–5. Mr. Parker further points to inconsistencies in Agent Sanders's declaration regarding his search of his archived emails. Pl.'s Mot. at 5. Although Agent Sanders claims that he "searched all files and folders of [his] archived email," Sanders Decl. ¶ 13, in the preceding paragraph, he describes himself as searching for his archived emails by searching "all emails and drafts located in my Outlook inbox (organized in folders by name), sent folder, outbox, and draft folder." Sanders Decl. ¶ 12. Lastly, Mr. Parker seeks the actual "applicable case number" that Agent Sanders used when searching his email, presumably in order to double check that Agent Sanders used the correct one. Pl.'s Mot. at 5.

Mr. Parker prevails on two of these three arguments. He is correct that, after this Court ordered that ICE provide the search terms it used, ICE should have released the actual search terms, not just descriptions of them, so that Mr. Parker could ensure that the correct search terms were used. *Cf. Kleinert v. Bureau of Land Mgmt.*, 132 F. Supp. 3d 79, 87–88 (D.D.C. 2015)

(holding that agency's search was inadequate when agency used an incorrect spelling of requester's name during its search). Additionally, because his declaration is ambiguous, Agent Sanders should clarify which folders he searched during his search of his archived emails.[1]

However, Mr. Parker is incorrect that in order for ICE's affidavits to be sufficiently detailed to support its renewed motion for summary judgment, it must include more details regarding which version of Microsoft Outlook Agent Sanders uses and the precise type of search its search function conducts. Mr. Parker has produced no evidence that the results of Agent Sanders's search, using the methods he has described, would have been different based on which version of Microsoft Outlook he used or based on whether he used ordinary or advanced searching. Apart from the two missing details listed above, Agent Sanders's declaration fully describes the methodology behind a search reasonably calculated to find all relevant emails on that email account. Therefore, Mr. Parker's conjecture that the search might have yielded different outcomes based on the program or search function used, without more, raises insufficient questions of fact to prevent summary judgement.

### 3. The Fate of Agent Sanders's Pre-2006 Emails

Mr. Parker's third issue with Agent Sanders's declaration is that it does not specify the location of all, or indeed any, of his emails, Outlook or otherwise, during the time frame of Mr. Parker's FOIA request. Pl.'s Mot. at 5. Agent Sanders never explains why his Outlook archive contains no email predating August 2006, leaving the Court to hypothesize that the reason these emails were not found was either because they were deleted, are stored elsewhere, or never existed in the first place because Agent Sanders did not begin using Microsoft Outlook until

---

[1] The Court notes that a third round of summary judgment briefing could have easily been avoided if ICE had simply provided these further clarifications as part of its most recent Reply brief.

August 2006. Mr. Mader has explained that "prior to 2006, many ICE offices, including regional Offices of the Resident Agent in Charge ("RAC"), were still using obsolete email systems such as cc:Mail," and that "emails that were contained within these obsolete email systems such as cc:Mail, were not migrated over to Microsoft Outlook." Mader Decl. ¶¶ 6–7. However, ICE has given no indication of whether the Little Rock office was one such RAC office to not make the switch until 2006. If Agent Sanders's Microsoft Outlook account did not begin sending and receiving emails until August 2006, then it is impossible for any of the emails on that account to have been created or generated between January 1, 1998 and January 31, 2006. If that is the case, then Agent Sanders's Outlook account cannot be one of the "systems of records likely to possess the requested records," and he was looking in the wrong place all along. *Marino v. Dep't of Justice*, 993 F. Supp. 2d 1, 9 (D.D.C. 2013) (citing *Oglesby*, 920 F.2d at 68). Agent Sanders should therefore explain the type of email he was using during the relevant time period (between January 1, 1998 and January 31, 2006), as well as the fate of his emails from that time period, if he is aware of it.[2] If he is unaware of it, then someone with personal knowledge should explain the fate of such emails from that time frame.

### 4. Agent Sanders's Hard Drive

Mr. Parker claims that Agent Sanders's "description of the search of his computer's hard drive is also woefully inadequate because it fails to provide any details identifying the 'Microsoft search function' employed for that search action." Pl.'s Mot. at 9. He continues that "[i]t is not at all clear as to the nature of that search process, or what types of system files Mr. Sanders was

---

[2] Mr. Mader's declaration, discussed in Section IV.B, *infra*, explains that "[i]t was not until 2006 that many [ICE] offices converted to the now widely used Microsoft Outlook email system," but does not directly address whether Agent Sanders's office was one of them. Mader Decl. ¶ 6.

11

searching for, or whether that search of his computer hard drive would have included, for example, any non-Outlook files that contained the email data responsive to Plaintiff's FOIA request." *Id.* Like some of the prior questions raised that could have easily been dealt with in its reply, ICE did not respond to these concerns regarding Mr. Sanders's search of his hard drive either.

The Court agrees with Mr. Parker that ICE must provide more information about this search in order to prevail on its renewed motion for summary judgment. Agent Sanders has explained that his "search was conducted across all files and folders," Sanders Decl. ¶ 16, and has specified which search terms (excepting the exact case number) he used. But he did not, for example, explain whether the search function he used only searched the names of documents, as opposed to their names and bodies, a difference that could lead to widely different results. Additionally, at the most basic level, Agent Sanders does not specify whether documents from the relevant time period even exist on his computer. If, for example, he used a different computer during ICE's investigation of Mr. Parker, and did not transfer the files from that computer to this new machine, then a search of his current computer's hard drive would not be "reasonably calculated to uncover [] relevant documents." *Weisberg*, 705 F.2d at 1351. As such, ICE should address where Agent Sanders's files from the relevant time period are most likely to be stored, whether on his current computer, an older computer, or a backup system. If it does not search that location, it should provide an explanation of why it was not practicable to do so.

### 5. Agent Sanders's Deleted Emails and Files

Mr. Parker also appears to believe that Agent Sanders should have searched his computer for *deleted* emails and files that would not have been retrieved during an ordinary search of his Outlook account or hard drive. He points out that "Mr. Sanders does not ever describe any

attempts to employ or use any type of data recovery procedures on any of his computer systems, using any programs or forensic methodologies designed to find responsive record data that may have been previously deleted, or would not otherwise be identified by simply performing a standard Microsoft or Outlook search." Pl.'s Mot. at 7–8.

Mr. Parker points to no case law that would require an agency to attempt this sort of procedure, or to explain why it did not attempt it, in order to succeed on summary judgment. Indeed, that is because such forensic searches will ordinarily not be required, absent extraordinary circumstances, such as when responsive files were deleted after the filing of a FOIA request. "FOIA demands only a reasonable search tailored to the nature of a particular request. When a request does not specify the locations in which an agency should search, the agency has discretion to confine its inquiry to a central filing system if additional searches are unlikely to produce any marginal return; in other words, the agency generally need not 'search every record system.'" *Campbell*, 164 F.3d at 28 (quoting *Oglesby*, 920 F.2d at 68). "However, an agency 'cannot limit its search to only one record system if there are others that are likely to turn up the information requested.'" *Id.* (quoting *Oglesby*, 920 F.2d at 68).

The agency has searched in multiple locations for emails responsive to Mr. Parker's FOIA request, and as of yet has been unable to locate any. As discussed above, this is perhaps because the email account and computer Agent Sanders is currently using did not exist while he was working on ICE's investigation of Mr. Parker, and none of the emails and documents from that investigation were transferred over to his current systems when he switched. But regardless of whether the files were transferred or not, in a routine case such as this one, the lack of results from Agent Sanders's original search does not necessitate that the agency conduct any sort of data recovery procedure on his computer or email account, absent evidence that the agency

deleted files responsive to Mr. Parker's FOIA request after he submitted it. Because no such evidence exists, the agency need not address its decision not to perform any data recovery operations in its renewed motion for summary judgment.

### B. The Mader Declaration

The Court now turns to Mr. Mader's declaration. In its Memorandum Opinion, the Court directed ICE "to provide an affidavit from an information-technology professional—like the affidavit cited in *Safety Research & Strategies, Inc.*—that describes the email backup system potentially containing Agent Mensinger's emails with greater specificity and describes any practical obstacles to searching that system." *Parker*, 238 F. Supp. 3d at 105 (citing *Safety Research & Strategies, Inc.*, 903 F. Supp. 2d at 7). This direction was given because "[w]ithout such a meaningful description of the agency's search process, Mr. Parker cannot adequately assess and potentially challenge the agency's claims" that it had sufficiently searched for Agent Mensinger's emails. *Parker*, 238 F. Supp. 3d at 105. The Court also directed ICE to address whether "any emails sent or received by Agent Sanders during the relevant time period would have migrated to the current Outlook system or whether they too would have remained on now-inaccessible recovery tapes." *Id.* at 105 n.15. In response, ICE submitted with its renewed motion for summary judgement the declaration of Charles Mader, a Supervisory Information Technology Specialist in the Office of the Chief Information Officer (OCIO) at ICE. *See* Mader Decl. ¶1.

Mr. Mader's declaration describes the general history of ICE's email and data storage systems. He explains that "prior to 2006 many ICE offices, including regional Offices of the Resident Agent in Charge ('RAC'), were still using obsolete email systems such as cc:Mail," and that "[i]t was not until 2006 that many of these offices converted to the now widely used

14

Microsoft Outlook email system." Mader Decl. ¶ 6. He further explains that emails from systems such as cc:Mail were not migrated to employees' new Microsoft Outlook accounts when their offices switched systems. Mader Decl. ¶ 7. These pre-Outlook emails "were only maintained by the agency in various backup tape systems, which are no longer accessible." *Id.* Indeed, it was not until 2008 that the agency implemented an agency-wide backup policy, a "server based disaster recovery system for email servers known as the Enterprise Vault (EV)." Mader Decl. ¶ 11. And as both Deputy FOIA Officer Fernando Pineiro and Mr. Mader have explained, ICE has limited ability to search the back-up tapes created prior to the implementation of the EV system in 2008. 2d Pineiro Decl. ¶ 10; Mader Decl. ¶ 13. Indeed, only backup tapes of emails sent via Microsoft Outlook can be searched today; any backup tapes of emails sent through cc:Mail or a similarly antiquated system are unsearchable, as ICE no longer possesses the equipment necessary to search and read their contents. *Id.* Furthermore, backup tapes of Microsoft Outlook emails sent and received between 2006 and 2008 "are often decommissioned due to age and damage to the tapes." Mader Decl. ¶ 14.

Mr. Mader also describes his office's search for Agent Mensinger's and Agent Sanders's emails in these backup tapes following the Court's denial of summary judgment. Mader Decl. ¶ 17. He explained that "[a]rchived emails from 2006 related to Plaintiff's FOIA request (if they exist) would be stored in Dallas, Texas, which maintains the backup tapes for employees" from the Little Rock office. Mader Decl. ¶ 15. Using a NetBackup system, which is "a solution used by ICE CIO to backup Exchange servers at each field site," Mader Decl. ¶ 17a, OCIO staffers were able to locate Little Rock backup tapes at the Dallas facility from 2006, but none from 1998 to 2005. Mader Decl. ¶ 16. Searching these tapes for the agents' names, OCIO did not find any

15

of Mr. Mensinger's emails,[3] but was able to locate Agent Sanders's emails from approximately August 2006 to December 2006. Mader Decl. ¶ 18. Despite the fact that these emails fell outside of the timeframe of Mr. Parker's FOIA request, the Office of the Principal Legal Advisor at ICE searched Agent Sanders's emails for responsive records, but found none. Mader Decl. ¶¶ 19–21.

Mr. Parker believes that the Mader Declaration fails "to provide essential information needed to evaluate the efficacy of his search actions, and his conclusions as to the alleged lack of any ICE back-up files containing data responsive to Plaintiff's FOIA request." Pl.'s Mot at 9. This is because, from the declaration, "it appears that the only material search performed involved some (undescribed) type of 'NetBackup' search actions that somehow 'determined that back-up tapes existed from HSI Little Rock from 2006, but not from the years before 2006." Pl.'s Mot. at 9–10 (footnote omitted) (quoting Mader Decl. ¶ 17(a)). Mr. Parker wonders if this "result was the product of the agency not including any back-up data tapes from Little Rock for the time periods prior to 2006 into the NetBackup system," a possibility that he believes Mr. Mader's declaration did not address. Pl's Mot. at 10. Additionally, Mr. Parker is troubled by the fact that ICE "d[id] not explain in any respect how or why the NetBackup program is an appropriate tool to exclusively rely upon for determining whether or not any back-up files for that time period and location may exist in any agency systems of records," *id.*, because it is unclear from the declaration whether NetBackup would be able to search within any physical back-up file tapes that pre-date the implementation of the NetBackup system. Without this sort of assurance from Mr. Mader, Mr. Parker does not believe that ICE's exclusive reliance on a

---

[3] OCIO's inability to locate Agent Mensinger's emails on these tapes is not surprising, as he was transferred from the Little Rock, Arkansas office to the Memphis, Tennessee office in August 2001, at which point Agent Sanders became the primary investigator on Mr. Parker's case. Sanders Decl. ¶ 14.

search of the NetBackup system demonstrates that no back-up files of those records exist in any of ICE's record systems. *Id.*

These concerns, however, do not raise the myriad questions of fact that Mr. Parker believes they do. When an agency has submitted declarations describing their searches that are "relatively detailed and nonconclusory and . . . submitted in good faith," courts may rely on them in deciding whether the agency's identification and retrieval efforts were sufficient. *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 352 (D.C. Cir. 1978). However, "[e]ven if these conditions are met the requester may nonetheless produce countervailing evidence, and if the sufficiency of the agency's identification or retrieval procedure is genuinely in issue, summary judgment is not in order." *Founding Church of Scientology of Washington, D.C., Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 836 (D.C. Cir. 1979).

Mr. Parker is incorrect that ICE has not demonstrated that NetBackup is the "appropriate tool to exclusively rely upon for determining whether or not any back-up files for that time period and location may exist." Pl's Mot. at 10. Mr. Mader described NetBackup as "a solution used by ICE CIO to backup Exchange servers in each field site." Mader Decl. ¶ 17a. Exchange is a type of server used to store Microsoft emails, for which Microsoft Outlook serves as a client interface. Therefore, according to Mr. Mader's declaration, ICE's NetBackup system can only retrieve and store emails sent using Microsoft Outlook or other Microsoft email clients. There is nothing within Mr. Mader's declaration to indicate that any pre-2006 Outlook emails, if they existed, would not have been stored in the NetBackup system.

As for pre-2006 non-Outlook emails, Mr. Mader has explained that "ICE does not have the capability to search, retrieve, or recover" "emails sent or received prior to the 2006 conversion, such as those sent or received on cc:Mail," because it "does not maintain the

equipment and software for these antiquated systems, such as cc:Mail, and would not [be] able to rebuild such equipment to replicate its environment for searching." Mader Decl. ¶ 13. "An agency is not required to obtain new equipment to process a FOIA request." *Spannaus v. CIA*, 841 F. Supp. 14, 18 (D.D.C. 1993). Therefore, if pre-2006 emails from the Little Rock office were sent using cc:Mail and were stored in tapes that still exist, they would not be retrievable nor searchable, and ICE would not be required to obtain new equipment to retrieve and search them.[4]

Mr. Parker has presented no evidence to contradict the assertion that NetBackup retrieved all the readable backup tapes that the agency has from the Little Rock office during the relevant time period. Indeed, the reason the OCIO staff's search only retrieved tapes from August 2006 onward is far from a mystery. Mr. Mader has explained that "many of the older tapes . . . were discarded due to damage or overwritten because of funding issues." Mader Decl. ¶ 16. In addition, he has explained that many of the older tapes, which contained emails from systems like cc:Mail, were discarded because they had been "made obsolete" by the agency's switch to Microsoft Outlook, or were not retrieved because they remain unreadable. Mader Decl. ¶ 14. It is an unfortunate outcome for any FOIA requester to find that the emails responsive to his FOIA request have either been deleted, or, if they have not been deleted, stored in an unreadable format. But such is the risk a FOIA requester takes when he requests electronic documents that were created more than ten years ago. ICE, for the most part, has done everything required of it under FOIA in giving Mr. Parker the material he seeks. Once it has addressed the few gaps the Court lists above, it will have fulfilled its duty, and will likely then be entitled to summary judgment in full.

---

[4] Agent Sanders's declaration, discussed in Section IV.A, *supra*, does not directly address when his office made the transition from cc:Mail to Microsoft Outlook, though it does note that he was unable to find any archives of his emails predating August 2006. Sanders Decl. ¶ 14.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment, ECF No. 35, is **GRANTED IN PART AND DENIED IN PART**, and Plaintiff's Motion for Summary Judgment, ECF No. 37, is **GRANTED IN PART AND DENIED IN PART**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: December 29, 2017                                              RUDOLPH CONTRERAS
                                                                                         United States District Judge